# In the United States Court of Federal Claims

No. 23-1901C
(Filed: September 26, 2024)
**FOR PUBLICATION**

```
*************************************
SOPHIA DIDLEY,                       *
                                     *
         Plaintiff,                  *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
         Defendant.                  *
                                     *
*************************************
```

*Ibidun Roberts*, Roberts Labor Law and Consulting, L.L.C., Columbia, MD, for Plaintiff.

*Matney E. Rolfe*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant. With her on briefs are *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Elizabeth M. Hosford*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C.

## OPINION AND ORDER

Sophia Didley, formerly a nurse with the Department of Veterans Affairs (the "agency" or "VA"), seeks backpay and related forms of relief. Compl. (ECF 1). She alleges that when she received promotions between 2014 and 2019, the agency neglected to increase her compensation accordingly. *Id.* ¶¶ 13–24. After the error was corrected in 2021, *id.* ¶ 21, a difference allegedly remained between what she had been paid and what she had been entitled to receive for the previous seven years, *id.* ¶ 24.

The government has moved to dismiss for lack of jurisdiction, arguing that no source of law mandates payment to Plaintiff and that the statute of limitations for some of the alleged underpayments has expired. *See* Mot. to Dismiss (ECF 9); RCFC 12(b)(1). Plaintiff counters that the relevant statutes and agency guidelines require payment, and she requests discovery as to the statute of limitations, *see* Resp. (ECF 10), a proposal the government opposes, *see* Reply (ECF 11). The government's motion is **DENIED IN PART**, and Plaintiff's request for jurisdictional discovery is

**GRANTED**. The government's motion, as it relates to the statute of limitations, will be **HELD IN ABEYANCE** pending jurisdictional discovery.

## BACKGROUND

The relevant facts of the case are stated above.[1] The governing law is simply put as well. Briefly, the agency employs nurses — among other healthcare professionals — at its facilities. *See* 38 U.S.C. § 7401(1). Congress has directed the agency to set its own rates of basic pay for many of those professionals, including nurses. 38 U.S.C. § 7451. The agency's nurses are divided into "grades," 38 U.S.C. § 7451(b) (cross-referencing grades established in 38 U.S.C. § 7404(b)), each with a range of basic pay, 38 U.S.C. § 7451(c)(1). Each grade's range of basic pay is divided into increments called "steps." 38 U.S.C. § 7451(c)(3). Congress has further provided that "[i]n addition to the rate of basic pay provided for nurses, a full-time nurse or part-time nurse shall receive additional pay" for overtime and for work during off-hours, weekends, and holidays. 38 U.S.C. § 7453.

The parties agree that the agency has promulgated pay rates in accordance with the statute. The agency's employee handbooks — which bind the agency, *see* Reply at 3 — describe how the rates work. Nurses "shall be compensated in accordance with salary tables established by the Secretary for each occupation and salary grade for which a range of rates is established[.]" VA Handbook 5007/60, Part II, Chapter 2, Section 1(a)(1) (ECF 10-2, at 15). The handbooks provide for pay increases over time. *See* VA Handbook 5007/42, Part III, Chapter 5, Section 1(a) (ECF 10-2, at 83) ("Periodic step increases may be granted to any … nurse … who is receiving less than the maximum rate of his or her grade. That employee shall be advanced to the next higher step rate within such grade subject to meeting the eligibility requirements and waiting periods listed below."). Other handbook provisions describe pay increases when nurses are promoted. *See, e.g.*, VA Handbook 5007/60, Part II, Appendix B, Section 2(a)(1) (ECF 10-2, at 43) ("Employees promoted from a grade to a higher grade shall receive basic pay at the lowest rate of the higher grade which exceeds the employee's existing rate of basic pay by not less than two step increments of the grade from which promoted."); *id.*, Part III, Chapter 2, Section 1(c) (ECF 10-2, at 75) ("[N]urses … shall receive basic pay at the lowest rate of the higher grade which exceeds the employee's existing rate of basic pay by not less than two-step increments of the grade from which promoted, unless pay retention rules

---

[1] Although "only uncontroverted factual allegations are accepted as true" in a motion to dismiss for lack of jurisdiction under RCFC 12(b)(1), *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993); *Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 766 (2014), the government does not challenge the truth of any allegations in the complaint. *See* Mot. to Dismiss at 3 n.1.

apply[.]"). The handbooks also provide for retroactive pay under some circumstances. VA Handbook 5007/42, Part III, Chapter 5, Section 1(g) (ECF 10-2, at 85) ("When a step increase is delayed beyond its proper effective date solely through an administrative error or oversight, the step increase shall be made retroactively effective as of the date it was properly due."); VA Handbook 5005/161, Part III, Chapter 4(A)(8)(a)(1) (ECF 10-1, at 103) ("Promotion recommendations and actions that are administratively delayed beyond the time limits specified … will be made retroactive.").

## **DISCUSSION**

The government's first argument is that Plaintiff has failed to identify a "money-mandating" law governing her claims for basic pay at the level of the promotions she received. Mot. to Dismiss at 3–9.[2] This Court has jurisdiction under the Tucker Act to adjudicate "any claim against the United States founded … upon … any Act of Congress or any regulation of an executive department … in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Because the Tucker Act is "a jurisdictional statute [that] does not create any substantive right enforceable against the United States for money damages," *United States v. Testan*, 424 U.S. 392, 398 (1976) (citing *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605–07 (1967)), parties asserting Tucker Act jurisdiction must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) (citing *Testan*, 424 U.S. at 398). That requires a "money-mandating" law, *i.e.*, a statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained … and is reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quotes and citations omitted) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and *United States v. White Mt. Apache Tribe*, 537 U.S. 465, 473 (2003)).

---

[2] When reviewing a motion to dismiss for lack of subject-matter jurisdiction under RCFC 12(b)(1), this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Aries Constr. Corp. v. United States*, 164 Fed. Cl. 290, 293 (2023) (citing *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (itself citing *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583–84)). Here, the government has not briefed any factual arguments. Mot. to Dismiss at 3 n.1. Instead, the government argues that the facts and sources of law in the Complaint show that the Court lacks jurisdiction over some or all of Plaintiff's claims.

The government's argument is indefensible.[3] The statute repeatedly describes the establishment of pay rates in mandatory terms. 38 U.S.C. § 7451(a)(3) ("[T]he rates of basic pay for covered positions in the Department shall be established and adjusted in accordance with this section[.]"); *id.* § 7451(b) ("The Secretary shall maintain the five grade levels for nurses[.]"); *id.* § 7451(c)(1) ("For each grade in a covered position, there shall be a range of basic pay."). The agency has no discretion *not* to make a pay scale. It would be strange if a statutory and regulatory structure mandating that an agency establish pay rates for government employees did not require that those employees actually receive money.

The Federal Circuit has treated similar direction to create a pay scale as money mandating. *See, e.g.*, *Bradley v. United States*, 870 F.2d 1578, 1579–80 (Fed. Cir. 1989) (holding that 5 U.S.C. § 5349, which stated that pay rates for certain federal employees "shall be fixed and adjusted from time to time," was money mandating because the government's "discretion in deciding whether to adjust rates … is not unlimited"); *Adams v. United States*, 810 F.2d 1142, 1143 (Fed. Cir. 1987). The statute providing a nurse's rate of pay therefore can "fairly be interpreted" as requiring that the basic pay be paid, and that the nurse can obtain recovery in this Court if the agency fails to pay her. *See Jan's Helicopter*, 525 F.3d at 1307; *cf. Fisher v. United States*, 402 F.3d 1167, 1174–75 (Fed. Cir. 2005) (holding that 10 U.S.C. § 1201 does not provide the agency discretion whether to pay disability retirement funds to eligible servicemembers "despite the presence of the word 'may'" and the absence of other mandatory language).

Even if interpretation of Section 7451 were in doubt, the Tucker Act does not require plaintiffs to point to a single statutory provision that independently mandates the payment of money. *Sharp v. United States*, 80 Fed. Cl. 422, 427 (2008). Instead, "separate statutory provisions can be read together to create a money-mandating statutory scheme sufficient to create jurisdiction under the Tucker Act." *Id.* (citing *El-Sheikh v. United States*, 177 F.3d 1321, 1323–24 (Fed. Cir. 1999), and *Ralston Steel Corp. v. United States*, 169 Ct. Cl. 119, 123–25 (1965)). Here, Section 7451 must be read in conjunction with Section 7452, which requires that certain promoted

---

[3] The government seems at times to interpret Plaintiff's claims as alleging a right to promotions, rather than to be paid at the rate corresponding to her grade and step. *See* Mot. to Dismiss at 7 (arguing that Section 7451 "in no way prescribes at which grade an individual nurse should be paid"); *id.* at 8 ("Even if Ms. Didley fulfills all of the conditions precedent to receive a particular Grade and Step, the agency is under no obligation to classify or pay Ms. Didley at that level."); *id.* at 9 ("As promotions are within the agency's discretion, and are not automatic, Ms. Didley cannot establish that she was *entitled* to the promotion necessary to receiving the higher compensation that she seeks."). But that is a pure strawman. Plaintiff's complaint is perfectly clear in alleging that she was not paid commensurately with promotions she actually received. Compl. at 3–4.

employees "shall be paid in that grade" at a step above their pay on the day before the promotion,[4] and Section 7453, which requires that nurses "shall receive additional pay" under specified circumstances. 38 U.S.C. §§ 7452, 7453. This Court has treated Section 7453 as money mandating elsewhere. *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 666 (2022); *see also Austin v. United States*, 124 Fed. Cl. 410, 415 (2015). The statutory system as a whole, which includes express direction to pay money, would be impossible to understand if the underlying pay scale were not money mandating.

Furthermore, even when a statute is not money-mandating by itself, if its implementing regulations are mandatory, then the combination will be construed as money-mandating. *Roberts v. United States*, 745 F.3d 1158, 1165–67 (Fed. Cir. 2014). Defendant concedes that the handbooks bind the agency.[5] Here, in addition to the statute, the agency's handbook is explicit that nurses "shall be" paid at their assigned grades and steps. VA Handbook 5007/60, Part II, Chapter 2, Section 1(a)(1) (ECF 10-2, at 15); *id.*, Part III, Chapter 2, Section 1(c) (ECF 10-2, at 75); VA Handbook 5007/42, Part III, Chapter 5, Section 1(a) (ECF 10-2, at 83); VA Handbook 5007/60, Part II, Appendix B, Section 2(a)(1) (ECF 10-2, at 43). That kind of language is not just money-mandating, it is classically, archetypically money-mandating. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 325 n.13 (2020) ("'[S]hall pay' language generally makes a statute money-mandating under the Tucker Act.") (quotes omitted); *Britell v. United States*, 372 F.3d 1370, 1378 (Fed. Cir. 2004) ("'[W]ill pay' or 'shall pay,' creates the necessary 'money-mandate' for Tucker Act purposes.") (citing *Agwiak v. United States*, 347 F.3d 1375, 1380 (Fed. Cir. 2003)); *see also Carson v. United States*, 161 Fed. Cl. 696, 707 (2022) (holding that other provisions of the VA Handbook are money-mandating).

At most, the government claimed at argument that the promotions Plaintiff allegedly received involved changes of title, and that no provision of the handbooks requires payment of money for promotions in that specific situation. Tr. at 15, 20, 29–30 (ECF 13). The government has not introduced any facts on Plaintiff's promotions, briefed a legal argument about the nature of the promotions alleged in the complaint, Tr. at 31–32, or cited any authority distinguishing Plaintiff's promotions from the other promotions where payment of money plainly is required, *see* VA Handbook 5007/60, Part II, Chapter 2, Section 1(a)(1) (ECF 10-2, at 15); *id.*, Part III, Chapter 2,

---

[4] Plaintiff acknowledges that Section 7452 does not apply here. Tr. at 7 (ECF 13).

[5] Reply at 3. Though not promulgated under the APA, "an agency manual or handbook can be a binding agency regulation." *Hamlet v. United States*, 63 F.3d 1097, 1103 (Fed. Cir. 1995) (citing *Service v. Dulles*, 354 U.S. 363 (1957), *Vitarelli v. Seaton*, 359 U.S. 535, 538–40 (1959), and *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 274–76 (1969)); *see also Curry v. United States*, 66 Fed. Cl. 593, 604 (2005) ("[T]he Court will assume that these … [VA] handbooks constitute 'regulation.'").

Section 1(c) (ECF 10-2, at 75); VA Handbook 5007/42, Part III, Chapter 5, Section 1(a) (ECF 10-2, at 83); VA Handbook 5007/60, Part II, Appendix B, Section 2(a)(1) (ECF 10-2, at 43). For purposes of the motion to dismiss, I deem the issue forfeited.

Given that there is a money-mandating source of law for Plaintiff's basic pay claims, Plaintiff's claims for additional pay are plainly based on money-mandating sources too. As mentioned, the additional pay statute uses language that requires payment of money, *see* 38 U.S.C. § 7453(a) ("In addition to the rate of basic pay provided for nurses, a full-time nurse or part-time nurse *shall receive* additional pay as provided by this section.") (emphasis added), and has been considered money mandating in the past. *Oztimurlenk*, 162 Fed. Cl. at 666; *Austin*, 124 Fed. Cl. at 415; *Curry*, 66 Fed. Cl. at 603. Aside from arguing that Section 7453 is not independently money mandating because the underlying basic pay statutes are not, the government does not contend otherwise. Plaintiff's claims are therefore within this Court's subject matter jurisdiction.

The government's other argument is somewhat more complicated. As the government notes, Plaintiff alleges that she was underpaid between 2014 and 2021. Mot. to Dismiss at 3; *see* Compl. ¶¶ 13–21. Generally, when the government fails to pay its employees, each underpayment creates an independent cause of action, "regardless of whether plaintiffs knew that they were entitled to seek [compensation]." *Jones v. United States*, 113 Fed. Cl. 39, 41 (2013) (citing *Oceanic Steamship Co. v. United States*, 165 Ct. Cl. 217, 225 (1964), *Bishop v. United States*, 77 Fed. Cl. 470, 481 (2007), and *Worthington v. United States*, 50 Fed. Cl. 712, 716 (2001), *aff'd*, 53 Fed. App'x 77 (Fed. Cir. 2002)). This Court's jurisdictional statute of limitations only goes back six years. 28 U.S.C. § 2501; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 135–39 (2008). The government therefore argues that claims for money owed before October 27, 2017 — six years before Plaintiff filed suit — are time barred. Mot. to Dismiss at 10–11. So far, so good.

Plaintiff, though, has an answer: She "repeatedly sought the retroactive payments and was routinely told by [the agency] that it would be paid." Resp. at 8; *see also* Compl. ¶ 19. At least some authority supports the proposition that the government's acknowledgement of indebtedness could delay accrual of a claim. *See Elliott v. United States*, 138 F. Supp. 873, 874 (Ct. Cl. 1956); *Int'l Potato Corp. v. United States*, 142 Ct. Cl. 604, 608 (1958); *Confederated Tribes & Bands of the Yakama Nation v. United States*, 89 Fed. Cl. 589, 614 (2009) ("[B]inding precedent holds that an acknowledgement of a debt is sufficient to restart a limitations period if, based upon the acknowledgment's accompanying circumstances, the court can

infer an intention or promise to pay the debt.").[6] But Plaintiff says that because she "is no longer employed with [the agency] and therefore does not have access to emails from her [agency] account," she needs jurisdictional discovery to prove that she was told to expect payment. Resp. at 9.

The government's response amounts to pure denial: "Ms. Didley does not identify any jurisdictional facts in dispute that would benefit from discovery prior to the statute of limitations period … [and] the information she seeks — to the extent it exists — would only further demonstrate that Ms. Didley was aware of her claim long before the statute of limitations ran on the time-barred portion of it." Reply at 8. But that is exactly wrong. Plaintiff has identified the facts she wants to develop, and she has legal authority — which the government does not mention — for why those facts matter for the statute of limitations. *See* Resp. at 8; Reply at 7–9. The proper course is to give Plaintiff her opportunity for jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, the government's motion is **DENIED IN PART**, and Plaintiff's request for jurisdictional discovery is **GRANTED**. The government's motion, as it relates to the statute of limitations, will be **HELD IN ABEYANCE** pending jurisdictional discovery.

The parties are **ORDERED** to file a joint status report proposing further proceedings no later than **October 28, 2024**.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

---

[6] *See also Fort Scott v. Hickman*, 112 U.S. 150, 163–64 (1884); *Shepherd v. Thompson*, 122 U.S. 231, 236–37 (1887) (both explaining the sufficiency of the acknowledgement necessary to revive a claim from the statute of limitations).